IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:10-CV-17-BO

| | |
|---|---|
| DUANE MINNICK,<br>         Plaintiff,<br><br>v.<br><br>COUNTY OF CURRITUCK; KNOTT'S ISLAND VOLUNTEER FIRE DEPARTMENT; CRAWFORD TOWNSHIP VOLUNTEER FIRE DEPARTMENT, INC; DAVID F. SCANLON, II, *named in his individual and representative capacities*; MICHAEL CARTER, *named in his individual and representative capacities*; TERRY KING, *named in his individual and representative capacities*; JERIT VAN AUKER, *named in his individual and representative capacities*; CHRIS DAILEY, *named in his individual and representative capacities*;<br>         Defendants. | ORDER |

This matter is before the Court on Defendants' Motions for Summary Judgment [DE 88, 90, 92]. Plaintiff responded to each of the Motions, Defendants replied, and the Motions are now ripe for adjudication. Mr. Minnick asserts that he was terminated from his employment with Currituck County for speaking out about safety violations at the volunteer fire departments and for his union affiliation, in violation of 42 U.S.C. § 1983. Because Mr. Minnick has failed to demonstrate that he was terminated or suffered other adverse employment action as a result of official policy or custom of Currituck County, the Court GRANTS Defendants' motions for summary judgment.

## BACKGROUND

Mr. Minnick was hired by the Currituck County Fire and EMS Department as a firefighter and EMT on April 9, 2007. On January 31, 2008, he organized a labor association and local affiliate of International Association of Firefighters (IAFF)–Local 4633. From that time until his termination, he acted as president and assisted other employees by raising issues and pursuing grievances on their behalf. He expressed concerns to volunteer fire chiefs that volunteer members were traveling at a high rate of speed in a school zone, that equipment was inadequate, and that volunteers took unsafe actions while on duty. During Mr. Minnick's employment, he claims that efforts were underway to integrate volunteers and paid staff. With the introduction of the IAFF Local, Mr. Minnick claims that volunteers were concerned that the Union, and the professionalization of fire protection services, would drive them from the County. He further asserts that he was a satisfactory employee, with satisfactory evaluations and no complaints about his skills as a firefighter.

Mr. Minnick received some written warnings while employed with Currituck County, for violations of the exchange of duty policy, for failure to follow the chain of command, and for failure to report to work on time. On July 11, 2009, Mr. Minnick was again late to report to work. He was suspended without pay for two shifts and was issued a final written warning. Chief Glover held a predisciplinary conference with Mr. Minnick to explain the sanctions. One month later, the President of Knott's Island VFD (where Mr. Minnick was then assigned) wrote a letter to Chief Michael Carter, complaining about Mr. Minnick's "denial of the station rules and...disrespect for the members." Knott's Island Defs' Ex. X. Chief Carter then recommended Mr. Minnick's termination. Mr. Minnick grieved his termination, which was upheld by Chief Carter and County Manager Scanlon.

Mr. Minnick filed the instant lawsuit on May 7, 2010. His second amended complaint [DE 55] alleges that he has suffered from retaliatory conduct for exercising his First Amendment rights to engage in union activity and to speak out on matters of public concern. Mr. Minnick pursues his claims under 42 U.S.C. § 1983. Specifically, he points to the following actions: (1) Volunteer Chief Dailey (of Crawford Township VFD) contacted County Manager Scanlon, Chief Carter, and Currituck County, directing them to take disciplinary action against Mr. Minnick; (2) Knott's Island VFD, Volunteer President King, Volunteer Chief Dailey, and Volunteer Chief Van Auker exercised their authority in directing Chief Carter and County Manager Scanlon to terminate Mr. Minnick; (3) Chief Carter transferred Mr. Minnick to Corolla Fire Station, forcing him to commute over two hours; (6) Chief Carter denied Mr. Minnick a transfer because of his involvement in Local 4633. As relief, he seeks a declaratory judgment, permanent injunction, an accounting, expungement of records, money damages, compensatory damages, front pay, and punitive damages.

## DISCUSSION

### I. Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment will be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The Court must view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden to show the court that there is no genuine issue concerning any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must then show that there is "evidence from which a jury might

return a verdict in his favor." *Anderson*, 477 U.S. at 257.

## II. Municipal Liability Under Section 1983

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section 1983 reaches only those persons acting under color of state law, which may include municipalities and other local government bodies. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a local government body cannot be held liable under section 1983 under a theory of *respondeat superior*. *Id.* at 691. Section 1983 liability can only attach to a local government body when "it causes such a deprivation through an official policy or custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).[1] "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469 at 479-80 (1986) (plurality opinion). In order to evaluate the instant motions for summary judgment, then, the Court must determine, viewing the facts in a light most favorable to Mr. Minnick, if any of the named defendants caused the alleged deprivation of Mr. Minnick's rights through operation of official policy or custom.

---

[1] Knott's Island VFD is the only defendant to assert that it is not a state actor for purposes of liability under section 1983 [DE 93 at 5]. Because the Court finds that Knott's Island VFD did not act through an official policy or custom or through an individual with final policymaking authority in any of the actions alleged by Mr. Minnick, the Court need not and does not reach the issue of whether Knott's Island VFD is in fact a state actor.

Official policy or custom can be found in certain affirmative decisions of individual policymaking officials. *Pembaur*, 475 U.S. at 480. To determine whether an individual is one such policymaking official, courts ask whether the individual speaks "with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Whether an official speaks with final policy-making authority is a question of state law, not of fact. *Ulrich v. City and County of S.F.*, 308 F.3d 968, 985 (9th Cir. 2002). For example, the Eighth Circuit has held that a fire chief did not have final policy-making authority where his actions were subject to review of the city administrator. *Bechtel v. City of Belton, Mo.*, 250 F.3d 1157, 1161 (8th Cir. 2001). The Fourth Circuit has held that a plaintiff's section 1983 claim against a City Council for her termination must fail when the ultimate termination decision was made by the Chief of Police. *Iglesias v. Wolford*, 667 F. Supp. 2d 573 (E.D.N.C. 2009), *aff'd* 400 F. App'x 793 (4th Cir. 2010) (per curiam).

### A. The VFDs

Pursuant to North Carolina General Statutes § 69-25.5, Currituck County has contracted with Crawford Township VFD and Knott's Island VFD, incorporated nonprofit volunteer fire departments, to provide fire protection and rescue services. The contracts governing these relationships provide that "all County employees working with the Department shall be under the direction and control of the County Manager or his designee and the Chief of EMS and/or shift supervisors. Crawford Township Defs.' Ex. T, ¶ 14; Knott's Island Defs.' Ex. 6, ¶ 14. Therefore, as volunteer fire departments subject to contract, Crawford Township VFD and Knott's Island VFD do not have supervisory control over or authority to discipline County employees, such as Mr. Minnick. Rather, the VFDs must "work through the County

Manager...and the Chief of EMS when personnel issues arise regarding County employees." Crawford Township Defs' Ex. T, ¶ 14; Knott's Island Defs.' Ex. 6, ¶ 14.

Although County employees are expected to adhere to Department guidelines, exception is made "where they conflict with Currituck County guidelines." Crawford Township Defs.' Ex. T, ¶ 15; Knott's Island Defs.' Ex. 6, ¶ 15. Currituck County is obligated only to "consult" with a District Fire Chief prior to a "permanent move, transfer or reassignment of County personnel." Crawford Township Defs.' Ex. T, ¶ 14; Ex. B, pp. 329-32; Ex. I, p. 183; Knott's Island Defs.' Ex. 6, ¶ 14. In other words, the VFDs lack final authority to transfer, reassign, or terminate County employees. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it."). Because the VFDs had no final policymaking authority on the conduct at issue here, the VFDs and individual VFD defendants cannot be held liable for any adverse employment actions suffered by Mr. Minnick under section 1983.

### B. County Manager Scanlon, Chief Carter, and the County of Currituck

Under North Carolina law, the Board of Commissioners is vested with the authority to make personnel policies. *See* N.C. Gen. Stat. § 153A-94. Although a policymaker may delegate the authority to implement individual personnel decisions, the ultimate authority to make personnel policy remains with the policymaker–and it is the policymaker alone who is subject to section 1983 liability. *Iglesias*, 667 F. Supp. 2d at 589. In North Carolina, "...[t]he [county] manager shall make his appointments, suspensions, and removals in accordance with any general personnel rules, regulations, policies, or ordinances that the board [of commissioners] may adopt." N.C. Gen. Stat. § 153A-82. Although the Board of Commissioners may have delegated

to County Manager Scanlon and County Manager Scanlon may have delegated to Chief Carter the discretion to make certain decisions, Mr. Minnick has not alleged that the Board of Commissioners "was aware of the constitutional violation and either participated in, or otherwise condoned it." *Iglesias*, 667 F. Supp. 2d at 590 (citing *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004)).

This case closely resembles a hypothetical presented by the Supreme Court in *Pembaur*, in which a Board of County Commissioners set county employment policy but delegated to the County Sheriff discretion to hire and fire employees. *Pembaur*, 475 U.S. at 1300, n. 12. So long as the Board did not delegate its power to establish final employment policy to the Sheriff, the Sheriff's decisions would not represent county policy and could not give rise to municipal liability. *Id.*; *see also Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 965 (4th Cir. 1995). So too here. Because County Manager Scanlon and Chief Carter had no policymaking authority, their decision to terminate Mr. Minnick was an implementation of the policy set by the Board of Commissioners.

Mr. Minnick argues that the Board of Commissioners has "completely abdicated its responsibility for creating policy relating to Union activities and/or speech on matters of public concern and has, therefore, impliedly delegated its authority to the County Manager, who possesses the unfettered ability to hire and fire County employees" [DE 100 at 28]. However, this argument adopts the logic rejected by the Supreme Court in *Jett*. 491 U.S. 701. In *Jett*, the Court clarified that "identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett*, 491 U.S. at 737 (emphasis in original). The Court thereby rejected Justice Brennan's logic in concurrence in *Prapotnik*, which would have permitted

assessment of a local government body's "actual power structures" for section 1983 liability purposes. *Id.*; *see Prapotnik*, 485 U.S. at 125 n. 1. In light of Supreme Court precedent on the issue, it would be inappropriate for this Court to look behind state law assigning final policymaking authority to the Board of Commissioners in order to conduct a fact-finding on whether County Manager Scanlon or Chief Carter "effectively" made final policy on personnel decisions when that policymaking authority is not conferred by state law.

As the final policymaking authority on personnel matters, the Board of Commissioners is only liable for acts that it "officially sanctioned or ordered." *Pembaur*, 475 U.S. at 480. Mr. Minnick has not alleged that the Board of Commissioners "was aware of the constitutional violation and either participated in, or otherwise condoned, it." *Love-Lane*, 355 F.3d at 782-83. Mr. Minnick has presented no evidence that he informed the Board that he believed his termination, transfer, or other adverse employment action was retaliatory. *See id.* Therefore, Mr. Minnick has failed to demonstrate the necessary involvement by the relevant final policymaking authority and his claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment [DE 88, 90, 92] are GRANTED.

SO ORDERED, this the **13** day of May, 2012.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE